NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY,
PLAINTIFF v. AMIR H. AYAZI, FAROUKH HASHEMI AND NATIONWIDE
MUTUAL INSURANCE COMPANY, DEFENDANTS

No. 9124SC636

(Filed 16 June 1992)

1. **Appeal and Error § 175 (NCI4th) — automobile accident — insurance — settlement — appeal of declaratory judgment action not moot**

    An appeal was not moot in a declaratory judgment action arising from a motor home accident where the seller, Henderson, had a policy with North Carolina Farm Bureau; the motor home was sold to Hashemi but the credit corporation holding title did not transfer title; defendant Ayazi was injured in a collision while a passenger in the motor home; Ayazi was an insured under a policy with Nationwide owned by his mother; Farm Bureau brought this action; summary judgment was entered for Ayazi holding that Hashemi was an insured under the Farm Bureau policy; and Farm Bureau settled with Ayazi. Farm Bureau would have a claim against Nationwide based on equitable subrogation if it were held that Hashemi was not an insured under the Farm Bureau policy.

    **Am Jur 2d, Automobile Insurance §§ 438, 467.**

2. **Insurance § 91 (NCI3d) — automobile accident — vehicle recently sold — title not transferred — buyer insured under seller's policy**

    Farm Bureau was liable for damages to a passenger in an automobile accident where Henderson owned a motor home and had a policy with Farm Bureau; Henderson sold the motor home to Hashemi but the credit company which held the title did not transfer the title; Ayazi was injured as a passenger when the motor home was being driven by Hashemi; and Ayazi was an insured under a UM/UIM policy with Nationwide owned by his mother. Although Hashemi assumed the loan and took possession of the vehicle, the certificate of title was never executed and, under *Jenkins v. Aetna Casualty and Surety Co.*, 324 N.C. 394, Hashemi is not the owner of the motor home for purposes of the Farm Bureau policy and Farm Bureau is liable. Although Farm Bureau contended that an exception should be created because both Henderson and Hashemi exe-

cuted a power of attorney to transfer title as part of the Transfer Agreement and the credit company held the certificate of title, the Court of Appeals held that *Ohio Casualty Insurance Co. v. Anderson*, 59 N.C. App. 621, was distinguishable and declined to establish the exception.

**Am Jur 2d, Automobile Insurance § 226.**

APPEAL by plaintiff from judgment entered 21 March 1991 by *Judge Charles C. Lamm* in WATAUGA County Superior Court. Heard in the Court of Appeals 15 April 1992.

On 26 July 1986 Eric Henderson (Henderson) purchased a 1986 Lindy motor home. He financed the purchase through a "Consumer Credit Installment Sale Contract, Security Agreement, and Disclosure Statement" with Chrysler First Credit Corporation (First Credit). First Credit had possession of the certificate of title from the date it was issued until 13 April 1989. Henderson insured the motor home under a business insurance policy with North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau). That policy was in effect between 25 July 1988 and 25 January 1989.

In August 1988 Henderson advertised the motor home for sale. Faroukh Hashemi (Hashemi) responded to the add. The two men met on 13 August 1988 and agreed that Hashemi would purchase the motor home and assume Henderson's loan with First Credit. Henderson gave Hashemi First Credit's phone number so that he could qualify to assume the loan. During the first week of September First Credit notified Henderson that Hashemi had been approved to assume the loan. First Credit also informed Henderson that he would receive a "Transfer Assignment and Agreement" (Transfer Agreement) which both he and Hashemi would be required to sign in the presence of a notary public. On 14 September 1988 the two men signed the Transfer Agreement in the presence of a notary public. After signing the Transfer Agreement, Henderson removed his North Carolina license tag from the motor home; gave the motor home keys to Hashemi; and delivered possession of the motor home to Hashemi. Hashemi then placed a Virginia license tag on the motor home. The signed Transfer Agreement was mailed to First Credit.

On 17 October 1988 Hashemi was driving the motor home when it was involved in a collision with a tractor trailer. Ayazi, a passenger in the motor home, was injured. At the time of the

accident, Ayazi's mother, Parvane M. Hashemi-Ayazi, owned a motor vehicle liability policy issued by defendant Nationwide which provided both UM and UIM coverage. Ayazi was an insured under that policy. On 3 November 1988 Hashemi submitted an application for insurance to cover the motor home. In the application he stated that he was the registered owner of the motor home.

On 5 June 1990, Ayazi filed a personal injury action against both Hashemi and Henderson in Fairfax County, Virginia. Farm Bureau then filed this declaratory judgment action on 27 June 1990. Subsequently, Farm Bureau and Ayazi both made motions for summary judgment. On 21 March 1991 summary judgment was entered in favor of Ayazi holding that Hashemi was an insured under the Farm Bureau policy. Farm Bureau has since settled the personal injury suit brought by Ayazi.

Farm Bureau appeals.

*Willardson & Lipscomb, by William F. Lipscomb, for plaintiff-appellant Farm Bureau.*

*Eggers, Eggers & Eggers, by Rebecca Eggers-Gryder, for defendant-appellee Nationwide.*

EAGLES, Judge.

[1] Initially, we address Nationwide's contention that this appeal is moot. Nationwide argues that because Farm Bureau is the primary carrier Farm Bureau's settlement with Ayazi removes any issue for resolution from before this court. This argument overlooks the express purpose of Farm Bureau's appeal, determination of whether Farm Bureau is a responsible party. If we were to hold that Hashemi was not an insured under the Farm Bureau policy, Farm Bureau would have a claim against Nationwide based on equitable subrogation. *See, e.g., Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 176 S.E.2d 751 (1970). Accordingly, we hold that this appeal is not moot, and we address the appeal on its merits.

[2] Farm Bureau concedes that the policy Henderson had with them was in effect at the time of the 17 October 1988 accident; that the motor home was a "covered auto" under the policy; and that Henderson was insured under the policy. However, Farm Bureau argues that Faroukh Hashemi was not an insured under the policy. Thus, the issue here is whether Hashemi was insured under the

Farm Bureau policy. The Farm Bureau policy provides in pertinent part:

D. **WHO IS INSURED.**

\* \* \*

> 2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

Because of Farm Bureau's above listed concessions and because Farm Bureau has abandoned its second assignment of error, that Henderson gave Hashemi permission to drive the motor home, pursuant to N.C.R. App. P. 28(b)(5), the remaining determinative issue is whether, for purposes of the Farm Bureau policy, Henderson was the owner of the motor home at the time of the accident. We hold that he was the owner of the motor home and accordingly affirm the trial court's decision.

*Jenkins v. Aetna Casualty and Surety Co.*, 324 N.C. 394, 378 S.E.2d 773 (1989) controls here. The facts of *Jenkins* were as follows: Patterson purchased an automobile from Junior for $400 cash and took possession of the vehicle. No certificate of title was passed in the transaction. Several years later Patterson was driving the car when it was involved in an accident. A passenger in the car was injured; the passenger sued and obtained a judgment against Patterson. Patterson then brought suit against the defendant insurance company to satisfy the judgment. On appeal this court held that Patterson "owned" the vehicle because he acquired an equitable interest in the car by paying full price for the vehicle and by taking possession of it. *Jenkins v. Aetna Casualty and Surety Co.*, 91 N.C. App 388, 371 S.E.2d 761 (1988). On further appeal, however, the Supreme Court disagreed and reversed. The Supreme Court held:

> N.C.G.S. § 20-72 requires proper execution of an assignment and delivery of the certificate of title before "legal" title and ownership pass. Applying the statutory definition of "owner," the statutory requirements for passing title and the statutory requirements for liability insurance, we have held that for purposes of tort law and liability insurance coverage, no ownership passes to the purchaser of a motor vehicle which requires registration until: (1) the owner executes, in the presence of a person authorized to administer oaths, an assignment and warranty of title on the reverse of the certificate of title,

including the name and address of the transferee; (2) there is an actual or constructive delivery of the motor vehicle; and (3) the duly assigned certificate of title is delivered to the transferee (or lienholder in secured transactions). (Citation and footnote omitted.)

\* \* \*

The evidence before the trial court in this case established that Patterson paid $400 cash as the total price for the Camaro and took immediate possession of the vehicle, but he never received the certificate of title. There was no indication from the forecast of evidence presented to the trial court that the owner, Jerome Hall, ever properly executed an assignment of the certificate of title. Clearly, the parties to this transaction did not comply with the requirements of N.C.G.S. § 20-72(b) for the transfer of legal title and ownership. As this Court has construed the relevant statutory provisions, there had been no transfer of title and ownership of the Camaro to Patterson. Therefore, Patterson did not "own" the vehicle within the terms of the liability insurance policy.

*Jenkins*, 324 N.C at 398-99, 378 S.E.2d at 776.

Here, Hashemi assumed the loan on the motor home and took immediate possession of the vehicle. However, the certificate of title was never executed in favor of Hashemi. Accordingly, under the *Jenkins* holding, for purposes of the Farm Bureau policy, Hashemi is not the owner of the motor home. Ownership remains with Henderson, and Farm Bureau is liable.

Notwithstanding *Jenkins*, Farm Bureau argues that this court should establish an exception to the three requirements quoted above and deem Hashemi to be the owner of the motor home. In support of this argument Farm Bureau cites *Ohio Casualty Insurance Co. v. Anderson*, 59 N.C. App. 621, 298 S.E.2d 56 (1982). Farm Bureau also argues that the lienholder, First Credit, held the certificate of title and that both Henderson and Hashemi executed the following power of attorney forms as part of the "Transfer Agreement."

I hereby appoint . . . Chrysler First Credit Corporation, as my attorney-in-fact, to apply for a certificate or duplicate certificate of title to, and to register; (and/or) to transfer title

or equity to; the vehicle . . . and for said purpose(s) to sign my name and do all things necessary to this appointment.

We recognize that *Anderson* established an exception to the three requirements listed above. However, we believe that *Anderson* is distinguishable from the instant case for the reasons stated in *Jenkins. See Jenkins*, 324 N.C. at 400, 378 S.E.2d at 777. Accordingly, we decline to establish another exception to the three requirements and we affirm the decision below. Our disposition of this appeal does not prejudice any cause of action Farm Bureau may have against First Credit.

Affirmed.

Judges ARNOLD and WELLS concur.