HEALTH MANAGEMENT ASSOCIATES, INC., AND LOUISBURG H.M.A., INC. D/B/A FRANKLIN REGIONAL MEDICAL CENTER, PLAINTIFFS v. LEMUEL G. YERBY, III, M.D., TRIANGLE SURGICAL ASSOCIATES, P.A., MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA A/K/A MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, INC., MEDICAL MUTUAL SERVICES, LLC, AND STEVEN SCHWAM, M.D., DEFENDANTS

No. COA10-577

(Filed 16 August 2011)

### 1. Contribution—medical negligence—piercing corporate veil—instrumentality rule—judicial estoppel—unlicensed insurance carrier

The trial court did not err in a medical negligence case by granting defendants' motion for summary judgment on the claim for contribution. Even assuming arguendo that plaintiffs could show genuine issues of material fact as to whether the corporate veil should have been pierced based upon the instrumentality rule, plaintiffs were barred from making such an argument under the doctrine of judicial estoppel. Health Management Associates (HMA) was not licensed as an insurance carrier in North Carolina, and Louisburg HMA paid no monies to settle the lawsuit.

### 2. Indemnity—medical negligence—independent contractors

The trial court did not err in a medical negligence case by granting defendants' motion for summary judgment on the claim for indemnity. Defendant doctor and defendant surgical company were independent contractors rather than employees of Louisburg HMA. Thus, HMA was not derivatively liable for any alleged negligence of defendant doctor.

### 3. Unjust Enrichment—medical negligence—no conscious acceptance of benefit

The trial court did not err in a medical negligence case by granting defendants' motion for summary judgment on the claim for unjust enrichment. Defendants did not consciously accept the benefit of a settlement.

### 4. Evidence—not newly discovered—motion for new trial— properly denied

The trial court did not err in a medical negligence case by denying plaintiffs' motions for a new trial under N.C.G.S. § 1A-1, Rules 59 and 60. The pertinent document was not "newly discovered" evidence after the summary judgment hearing.

**HEALTH MGMT. ASSOCS., INC. v. YERBY**

[215 N.C. App. 124 (2011)]

Appeal by plaintiffs from orders entered 1 June and 23 July 2009 by Judge John R. Jolly, Jr. in the Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 17 November 2010.

*The Mitchell Law Group, by Ronnie M. Mitchell and Grant S. Mitchell, for plaintiff-appellants.*

*Young Moore and Henderson P.A., by Kelly E. Street, William P. Daniell, and Robert D. Walker, Jr., for defendant-appellees.*

STEELMAN, Judge.

Where HMA was judicially estopped from asserting that the corporate veil should be pierced between HMA and Louisburg HMA, HMA was not licensed as an insurance carrier in North Carolina, and Louisburg HMA paid no monies to settle the Faulkner lawsuit, the trial court did not err in finding that neither HMA nor Louisburg HMA had standing to recover contribution from defendants. Where there was no factual issue that Dr. Yerby and Triangle Surgical Associates were independent contractors rather than employees of Louisburg HMA, the trial court properly granted summary judgment on plaintiffs' indemnity claim. Where defendants did not consciously accept the benefit of a settlement, there was no claim for unjust enrichment.

## I. Factual and Procedural Background

On 25 June 2002, Joan M. Faulkner (Faulkner) visited Franklin Regional Medical Center for an excisional biopsy of her left cervical lymph node. Dr. Lemuel Yerby, III (Dr. Yerby) performed the operation. During the operation, supplemental oxygen was administered through a nasal cannula and face mask. Dr. Steven Schwam (Dr. Schwam) managed and supervised the administration of anesthesia. Dr. Yerby used an electrosurgical unit while performing the operation. The electrosurgical unit came into contact with the oxygen and ignited a fire. Faulkner was severely burned on her face, neck, and chest.

In 2003, Falkner and her husband filed a complaint seeking recovery for medical negligence against Health Management Associates, Inc. (HMA); Louisburg H.M.A., Inc., d/b/a Franklin Regional Medical Center (Louisburg HMA); Dr. Yerby; Triangle Surgical Associates, P.A.; and Dr. Schwam in Franklin County case 03 CVS 271. On 20 September 2004, Dr. Schwam entered into a settlement agreement with the Faulkners and was released from all claims. On 24 August 2005, five days before the scheduled trial, the Faulkners signed a settlement agreement with HMA and its professional liability insurance

carrier, The Doctor's Company, and agreed to release HMA, Louisburg HMA, Dr. Yerby, and Triangle Surgical Associates, P.A. from any and all claims arising from the 25 June 2002 incident. Dr. Yerby and Triangle Surgical Associates, P.A. had not authorized HMA to act on their behalf and had refused to participate in the settlement negotiations. Pursuant to the settlement agreement, The Doctor's Company paid to the Faulkners its liability policy limits and HMA paid an additional amount.[1] On 5 June 2006, the Faulkners dismissed their complaint with prejudice.

On 24 August 2006, HMA and Louisburg HMA (collectively, plaintiffs) filed this action against Dr. Yerby, Triangle Surgical Associates, P.A., Medical Mutual Insurance Company of North Carolina a/k/a Medical Mutual Insurance Company of North Carolina, Inc., Medical Mutual Services, LLC, and Dr. Schwam, for contribution, indemnity, and unjust enrichment. Subsequently, all defendants were voluntarily dismissed with the exception of Dr. Yerby and Triangle Surgical Associates, P.A. (collectively, defendants). On 27 October 2006, defendants filed an answer and denied the material allegations of plaintiffs' complaint. On 24 July 2007, the Chief Justice of North Carolina designated this case as a complex business case and assigned it for hearing. On 26 January 2009, defendants filed a motion for summary judgment.

On 1 June 2009, the trial court entered a lengthy order, granting defendants' motion for summary judgment, and dismissing plaintiffs' complaint. On 23 July 2009, the trial court denied plaintiffs' motions to reconsider, amend, alter, or otherwise grant relief from the 1 June 2009 order pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure.

Plaintiffs appeal.

## II. Summary Judgment Order

In their first argument, plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment. We disagree.

### A. Standard of Review

The standard of review on a trial court's ruling on a motion for summary judgment is *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on

---

1. The settlement agreement was confidential and the amount of the settlement was redacted from the record.

**HEALTH MGMT. ASSOCS., INC. v. YERBY**

[215 N.C. App. 124 (2011)]

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted).

### B. Analysis

### 1. Claims for Contribution

**[1]** N.C. Gen. Stat. § 1B-1 provides: "Except as otherwise provided in this Article, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." N.C. Gen. Stat. § 1B-1(a) (2009). However, "[t]he right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." N.C. Gen. Stat. § 1B-1(b) (2009). The right of contribution is statutory and only applies to joint tort-feasors. *Roseboro Ford, Inc. v. Bass*, 77 N.C. App. 363, 367, 335 S.E.2d 214, 217 (1985).

> Two or more parties are joint tort-feasors when their negligent or wrongful acts are united in time or circumstance such that the two acts constitute one transaction or when two separate acts concur in point of time and place to cause a single injury. *The burden is on the tortfeasor seeking contribution to show that the right exists, and to allege facts which show liability to the injured party as well as a right to contribution.*

*State Farm Mut. Ins. Co. v. Holland*, 324 N.C. 466, 470, 380 S.E.2d 100, 102-03 (1989) (internal citations omitted) (emphasis added). It was incumbent upon HMA and Louisburg HMA to demonstrate a right to contribution against defendants.

The trial court entered its order upon uncontroverted facts. As to HMA, it held that there was no admissible evidence that HMA was independently negligent in causing injuries to the Faulkners. There was thus no basis for a contribution claim by HMA against defendants. The trial court rejected HMA's contention that Louisburg HMA was the "mere instrumentality" of HMA based upon two grounds: (1) there was no evidence to support that theory; and (2) HMA, by taking

a contrary position in the prior litigation, was judicially estopped from asserting that theory. Finally, the trial court rejected HMA's contention that it was a subrogated insurance carrier for Louisburg HMA because it was not licensed as an insurance company in North Carolina. As to Louisburg HMA, it held that because it had made no settlement payments to the Faulkners, it did not have independent standing to pursue a contribution claim against defendants.

### a. HMA

With regard to HMA, plaintiffs' main contention was that the corporate veil between Louisburg HMA and HMA should be deemed pierced under the instrumentality rule. Thus, HMA was liable for the acts of Louisburg HMA, and payment made on behalf of Louisburg HMA entitles HMA to contribution from defendants.

Plaintiffs contend that they should be permitted to disregard the corporate structure which they themselves created, *i.e.*, reverse piercing of the corporate veil. "Occasionally the owners of the corporation themselves will urge a court to disregard a separate corporate entity for their own benefit ('insider reverse pierce'). This argument is rarely sustained, but may be accepted in special circumstances." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, § 2.10[1], at 2-26 (7th ed. 2010) (footnote omitted); *see also Board of Transportation v. Martin*, 296 N.C. 20, 29, 249 S.E.2d 390, 396 (1978) ("Where persons have deliberately adopted the corporate form to secure its advantages, they will not be allowed to disregard the existence of the corporate entity when it is to their benefit to do so." (citations omitted)); *Department of Transp. v. Airlie Park, Inc.*, 156 N.C. App. 63, 68, 576 S.E.2d 341, 345 (citing Robinson), *appeal dismissed*, 357 N.C. 504, 587 S.E.2d 417 (2003); *Terry v. Yancey*, 344 F.2d 789, 790 (4th Cir. 1965) ("[W]here an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages." (citations omitted)).

Even assuming *arguendo* that plaintiffs could show genuine issues of material fact as to whether the corporate veil should have been pierced based upon the instrumentality rule, plaintiffs are barred from making such an argument under the doctrine of judicial estoppel.

"[J]udicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation." *Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005) (quotation omitted). In *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 591

S.E.2d 870 (2004), the North Carolina Supreme Court articulated three factors to consider for invoking judicial estoppel:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 29, 591 S.E.2d at 888-89 (internal quotations and footnote omitted). The only factor that must be present for judicial estoppel to apply is the first factor. *Wiley v. United Parcel Serv., Inc.*, 164 N.C. App. 183, 188, 594 S.E.2d 809, 812 (2004). The purpose of this doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]" *Whiteacre P'ship*, 358 N.C. at 28, 591 S.E.2d at 888 (internal quotations omitted).

In the underlying Faulkner case (Franklin County case 03 CVS 271), plaintiffs, then defendants, denied allegations that HMA "owns, operates, manages and controls defendant Louisburg H.M.A., Inc., as a wholly owned subsidiary that defendant HMA operates as a mere instrumentality."

In response to discovery in the Faulkner case, plaintiffs asserted that "Louisburg H.M.A., Inc., is a North Carolina incorporated entity, doing business as Franklin Regional Medical Center. Louisburg H.M.A. . . . *is distinct and apart from H.M.A., Inc.*, which is incorporated in the State of Delaware." (Emphasis added.) Plaintiffs submitted the following answer in their Supplemental Responses to the Faulkners' First Set of Interrogatories and Request for Production of Documents and Motion for Protective Order:

> [Question] 6. If HMA contends that it does not operate Louisburg HMA, Inc. as a mere instrumentality, provide all facts that support the contention.

> **ANSWER:** HMA does [sic] operate Louisburg HMA, Inc., as a mere instrumentality since HMA does not completely dominate Louisburg HMA finances nor its policy or

business practices. Furthermore, Louisburg HMA has, with regard to its policies and procedures, its own separate mind, will and existence. Louisburg HMA is adequately capitalized and has complied with corporate formalities, and has its own independent corporate identity. Louisburg HMA has its own articles of incorporation and bylaws.

In the instant case, plaintiffs alleged in their complaint that "Plaintiff HMA owns, operates, manages, and controls Franklin Regional Medical Center" and that Louisburg HMA "is . . . doing business as Franklin Regional Medical Center in Franklin County, North Carolina." In their brief to the trial court in opposition to defendants' motion for summary judgment, plaintiffs argued that: (1) Louisburg HMA had limited capital; (2) Louisburg HMA did not observe corporate formalities; and (3) HMA operated Louisburg HMA as a mere instrumentality. Further, in their brief to this Court, plaintiffs argue that "HMA . . . completely dominated the Louisburg HMA subsidiary;" "HMA had utter and complete authority and exercised actual control over its subsidiary, operating the latter as a mere instrumentality or tool;" "Louisburg HMA did not manage its own finances, had very little cash or deposits;" and "in total disregard of corporate formalities, HMA . . . had unfettered discretion over the funds of Louisburg HMA" and "exercised its control of Louisburg HMA by operating without contracts or resolutions."

Plaintiffs' factual assertions in the underlying Faulkner case (Franklin County case 03 CVS 271) are unequivocally inconsistent with those of the instant case. Plaintiffs are judicially estopped from asserting that the corporate veil should be pierced between HMA and Louisburg HMA.

The trial court also held that HMA did not have standing to recover contribution from defendants on the theory that it was in the position of a subrogated insurance carrier for Louisburg HMA because HMA was operating without the necessary licensure in North Carolina pursuant to N.C. Gen. Stat. § 58-28-15.

N.C. Gen. Stat. § 58-28-15 provides, in part, that "no company transacting insurance business in this State without a license shall be permitted to maintain an action at law or in equity in any court of this State to enforce any right, claim or demand arising out of the transaction of such business until such company shall have obtained a license." In his deposition, Timothy Parry, HMA's senior vice presi-

dent, conceded that HMA had never been licensed to sell insurance in the State of North Carolina.

Plaintiffs argue that HMA's "self-insurance" program does not fall within the meaning of term insurance. Plaintiffs cite *Wake County Hosp. System v. National Cas. Co.*, 804 F. Supp. 768 (E.D.N.C. 1992), *aff'd*, 996 F.2d 1213 (4th Cir. 1993), for this proposition. In *Wake County Hosp. System*, the Court explained that "under a self-insurance scheme, no written insurance policy is issued by another individual or entity nor is a premium paid because obviously a business which is self-insured does not need to pay itself to protect against its own risk of loss." *Id.* at 775. The Court then agreed with the plaintiff hospital's contention that a self-insured retention does not fall within the plain and ordinary meaning of the term insurance, *i.e.* an insurance policy issued by a licensed insurer in exchange for a premium charged. *Id.*

In the instant case, in order for HMA to be protecting itself "against its own risk of loss," HMA and Louisburg HMA must be considered to be a single corporate entity. As discussed above, HMA and Louisburg HMA are estopped from making such an argument. For purposes of this appeal, HMA and Louisburg HMA are separate and distinct entities. Thus, HMA's insurance program with Louisburg HMA cannot be "self-insurance."

HMA was operating an insurance program in North Carolina without a license pursuant to N.C. Gen. Stat. 58-28-15 and is barred from recovering contribution on this basis.

### b. Louisburg HMA

With regard to Louisburg HMA, plaintiffs contend that the trial court's conclusion that Louisburg HMA did not pay any of the monies paid to the Faulkners is unfounded. We disagree.

Plaintiffs argue that the payment by The Doctor's Company was made on behalf of Louisburg HMA. However, there is no evidence in the record to support this contention. The insurance policy with The Doctor's Company was not included in the record on appeal. Thus, this Court is unable to discern who was an "Insured" under the policy. We further note that there is no other evidence in the record that Louisburg HMA was a beneficiary under the terms of the policy. To the contrary, HMA's supplemental responses to the first set of interrogatories in the Faulkner lawsuit (Franklin County case 03 CVS 271) identified The Doctor's Company as the insurer and under the sub-

section where it was to list the "Type of policy and person(s) covered;" it stated "Hospital and healthcare facility liability policy covering Health Care Management Associates, Inc."

Plaintiffs next argue that Louisburg HMA participated in and made contributions to the "self-insurance" pool of HMA and those funds were paid to settle the Faulkner case. However, as discussed above, HMA's insurance program with Louisburg HMA is not self-insurance under the facts this case.

Plaintiffs have failed to show that Louisburg HMA has paid its *pro rata* share of the settlement payment to the Faulkners in order to establish a claim for contribution. *See Jones v. Shoji*, 336 N.C. 581, 586, 444 S.E.2d 203, 206 (1994) (holding that where a church did not pay any part of a settlement agreement, it did not pay more than its *pro rata* share and was not entitled to contribution).

The trial court properly concluded that neither HMA nor Louisburg HMA had standing to recover contribution from defendants.

## 2. Indemnity

[2] Plaintiffs alternatively argue that they are entitled to indemnity from defendants. This Court has stated:

> A right to indemnity arises in cases of primary-secondary liability, *i.e.*, when two persons (1) . . . are jointly and severally liable to the plaintiff . . . and (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former.

*Sullivan v. Smith*, 56 N.C. App. 525, 531, 289 S.E.2d 870, 874 (quotation omitted), *disc. rev. denied*, 306 N.C. 392, 294 S.E.2d 220 (1982). In the instant case, plaintiffs alleged in their claim for indemnity that "[a]s a direct and proximate result of the negligence of defendants Yerby and Schwam . . . HMA suffered derivative fault." However, " 'it has long been . . . the general rule that there is no vicarious liability upon the employer' for the torts of an independent contractor." *Id.* at 532, 289 S.E.2d at 874 (quotation and alteration omitted). In their supplemental responses to Dr. Yerby's first set of interrogatories and requests for production of documents, plaintiffs conceded that Dr. Yerby was not an agent, employee, or servant of HMA or Franklin Regional Medical Center. Thus, Dr. Yerby was an independent contractor and HMA is not derivatively liable for any alleged negligence of Dr. Yerby. *Id.*

Plaintiffs are not entitled to indemnification. This argument is without merit.

### 3. Unjust Enrichment

[3] Plaintiffs assert that defendants were unjustly enriched because they benefitted from the settlement of the Faulkner case.

> In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.

*Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (citation omitted), *reh'g denied*, 323 N.C. 370, 373 S.E.2d 540 (1988). In addition, the defendant must have consciously accepted the benefit. *Id.; see also Wright v. Wright*, 305 N.C. 345, 350, 289 S.E.2d 347, 351 (1982) ("Not every enrichment of one by the voluntary act of another is unjust. Where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value." (quotation omitted)).

In the instant case, plaintiffs' payment of the settlement agreement on behalf of defendants was voluntary and unsolicited. Defendants had not authorized HMA to act on their behalf and did not participate in the settlement negotiations. Further, defendants did not execute the settlement agreement. At the summary judgment hearing, defendants' counsel stated, "We did not want them to settle." Thus, defendants are not liable to plaintiffs under the theory of unjust enrichment.

The trial court properly granted summary judgment in favor of defendants.

### III. Rule 59/Rule 60 Order

[4] In their second argument, plaintiffs contend that the trial court erred by denying plaintiffs' motions for a new trial under Rule 59 and for relief from judgment under Rule 60. We disagree.

Plaintiffs base both motions upon the assertion that the affidavit of Grena Porto, which allegedly evinces the direct negligence of

HMA, was inadvertently not given to HMA's present counsel. Thus, its discovery constituted newly discovered evidence.

In order for evidence to be considered "newly discovered," it "must be such that it could not have been obtained in time for the original proceeding through the exercise of due diligence." *Waldrop v. Young*, 104 N.C. App. 294, 297, 408 S.E.2d 883, 884 (1991) (citation omitted). It is undisputed that plaintiffs' counsel was served with the affidavit on 15 August 2005, and that the affidavit was filed in the Faulkner case with the Clerk of Superior Court for Franklin County. The document was not "newly discovered" after the summary judgment hearing in the instant case had concluded. The trial court did not err in denying plaintiffs' motions pursuant to Rules 59 and 60.

This argument is without merit.

### IV. Conclusion

Based upon the peculiar facts of this case, where HMA and Louisburg HMA are judicially estopped from piercing the corporate veil, HMA was not licensed as an insurance carrier in North Carolina, and defendants did not consent to, approve, or ratify the settlement made by HMA with the Faulkners, we affirm the ruling of the trial court granting defendants' motion for summary judgment.

AFFIRMED.

Judges STEPHENS and HUNTER, JR., ROBERT N. concur.